IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERVICE EMPLOYEES )<br>INTERNATIONAL UNION, )<br>HEALTHCARE PENNSYLVANIA, )<br>              Plaintiff, )<br>              )<br>     vs. )<br>              )<br>              )<br>LEGACY HEALTH NETWORK, LLC; )<br>COMMONWEALTH MEDICAL CENTER,)<br>              Defendants. ) | Civil Action No. 08-138<br>Judge David Stewart Cercone<br>Magistrate Judge Amy Reynolds Hay |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss filed on behalf of defendants Legacy Health Network, LLC, and Commonwealth Medical Center [Dkt. 2], be denied.

II.    Report

Presently before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendants Legacy Health Network, LLC ("Legacy") and Commonwealth Medical Center ("CMC") (collectively, "defendants").

    A.    Procedural History

Plaintiff, Service Employees International Union, Healthcare Pennsylvania ("the Union"), commenced this action under Section 301 of the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185, in an effort to confirm an arbitration award it obtained against Aliquippa Community Hospital ("ACH") in August of 2007.

According to the Complaint, the Union represented hourly employees at ACH under a series of Collective Bargaining Agreements ("CBA"), which required, in relevant part,

that the Employer make contributions to a defined benefits pension plan -- the SEIU National Industry Pension Fund ("NIPF"). Complaint ¶¶ 3, 5, 8, 9 [Dkt. 1]. More specifically, Appendix J of the CBA in effect from February 7, 2005 through June 30, 2008,[1] provides that:

> Effective, and retroactive to June 30, 2004 and in addition to any payment of interest or penalties due to the Fund, and for the duration of this Collective Bargaining Agreement, including any extensions or renewals thereof, the Employer agrees that for each hour of pay paid to each employee to whom this Agreement is applicable, for any reason provided for in this Collective Bargaining Agreement, it will contribute to the Fund, effective and retroactive to the date of Plan Termination, the total sum of sixty cents ($.60) per hour.

Complaint ¶¶ 8, 9. See Complaint, Exh. A: CBA, Appendix J. See also Id. at Article 19.1(a); Article 35.1. It is undisputed, however, that no contributions to the NIPF were ever made and on November 28, 2006, the Union filed a grievance against ACH seeking pension contributions to the NIPF retroactive to 2004. Complaint ¶¶ 10, 11. The case proceeded to arbitration and on August 3, 2007, the arbitrator issued an Opinion and Award ("the Award"), granting the Union's request for pension contributions after October 30, 2006, but denying its request for contributions retroactive to June 20, 2004.[2] Complaint ¶ 13.

The Union subsequently initiated an action in this Court seeking to confirm the award against ACH insofar as its request for pension contributions was granted after October 30, 2006, and to vacate the portion of the award denying contributions retroactive to June of 2004. Complaint ¶¶ 17. See Service Employees International Union, District 1199P v. Aliquippa Community Hospital, Civil Action No. 2:07-cv-1166.

---

[1] A copy of the CBA is attached to the Complaint as Exhibit A.

[2] A copy of the Award is attached to the Complaint as Exhibit B.

In the interim, it is alleged that Legacy, which managed all of ACH's business operations between April 17, 2006, and April 16, 2007, pursuant to a management service agreement and, according to the Complaint, continued to do so thereafter thereby becoming "a single and/or joint employer with ACH," created CMC, which then purchased all of ACH's assets. Complaint ¶¶ 4, 6, 7, 15, 18, 23. The Union contends that CMC is the alter ego of Legacy having been created by Legacy in order to evade its obligations under the CBA. Complaint ¶¶ 14-16, 18.

The Union therefore filed the instant complaint against Legacy and CMC on January 30, 2008, seeking a declaratory judgment that Legacy is a single and/or joint employer of ACH (Count I); a declaratory judgment that CMC is an alter ego of Legacy (Count II); and a declaration that Legacy, as ACH's joint employer, and CMC, as Legacy's alter ego, have incurred ACH's liabilities under the CBA and have breached the terms of the CBA by failing to make pension contributions to the NIPF retroactive to October 30, 2006 (Count III).[3]

Defendants have now filed a motion to dismiss arguing that all three counts of the Complaint are properly dismissed.

B. Standard of Review

The United States Supreme Court has recently held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S.

---

[3] Although the Union has stated in its Complaint that it seeks pension contributions retroactive to June 20, 2004, which would seemingly enlarge the award granted by the arbitrator who found that contributions were owing only from October 30, 2006 onward, the Union has acknowledged that the June 20, 2004 date was mistakenly set forth in the Complaint and that it only seeks contributions against Legacy and CMC retroactive to October 30, 2006. See Dkt. 11, p. 9.

Ct. 1955, 1974 (2007) (rejecting the long-adhered to 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.), cert. denied, 474 U.S. 935 (1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126. 143 (3d Cir. 2004), citing Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. The question, however, is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. See Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

  C. <u>Discussion</u>

  Defendants initially argue that the Complaint should be dismissed because the Union -- SEIU Healthcare, Pennsylvania -- was not a party to the arbitration proceedings or Award and, therefore, lacks standing to confirm the Award. Although it appears that SEIU 1199P, and not SEIU Healthcare Pennsylvania, was the named union party in the arbitration proceedings, the Union has represented here that it is the same entity as SEIU 1199P, having simply changed its name to SEIU Healthcare Pennsylvania since the arbitration. Defendants do not dispute that the Union is the same entity as SEIU 1199P or that SEIU 1199P was a party to

4

the arbitration and would have standing to bring this action. Nor have defendants cited to any authority for the proposition that an entity who has suffered an injury loses its standing to bring an action merely because it has changed its name in the interim. See Pennsylvania Family Institute, Inc. v. Black, 489 F.3d 156, 165 (3d Cir. 2007) (A plaintiff has standing to bring an action where it has suffered a cognizable injury that is causally connected to the alleged conduct and is capable of being redressed by a favorable judicial decision). It therefore appears that the Union has standing to confirm the arbitration award at issue and defendants' motion in this regard is properly denied.

Defendants also argue that the Complaint should be dismissed because it is improper in an action seeking to confirm an arbitration award to make factual inquiries and determinations concerning alter ego liability. To support their position, defendants rely principally on Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., 312 F.2d 299 (2d Cir.), cert. denied, 373 U.S. 949 (1963) ("Orion"), and Truck Drivers, Chauffeurs and Helpers, Local Union No. 384 v. Stearly Motor Freight, Inc., 544 F. Supp. 623 (E.D. Pa. 1982) ("Stearly"). In Orion, Orion entered into a commercial contract with Eastern Panama to transport oil supplied by Eastern Panama from the Persian Gulf to Houston, Texas. Eastern Panama's obligations under the contract were guaranteed by its parent company, Eastern American, which was succeeded by Signal Oil & Gas Company ("Signal"). When Eastern Panama sought to terminate the contract, Orion obtained a court order compelling Eastern Panama, and only Eastern Panama, to submit to arbitration pursuant to the terms of the contract. Orion, 312 F.2d at 300.

Notwithstanding that Eastern Panama's liability under the contract was the only issue before the arbitrator and that neither Eastern American nor Signal's guarantee was submitted into evidence, the arbitrator determined not only that Eastern Panama was liable for breaching the contract but that Signal was liable on its guarantee if Eastern Panama defaulted. Id. In ruling on a motion to confirm the arbitration award subsequently filed by Orion and a motion to vacate the award filed by Signal, the district court found that the arbitrator exceeded his powers by determining the obligations of a corporation that was not a party to the arbitration and where the issue of its liability was not an issue before the arbitrator. Thus, the court concluded that the award against Signal was properly vacated under the United States Arbitration Act, 9 U.S.C. § 10(d). Id.

On appeal, Orion conceded that the arbitrator exceeded his powers in determining Signal's liability as guarantor and that the question of whether Signal could be bound by the award should be determined by the Court and not the arbitrator. It nevertheless argued that the district court could have, and apparently should have, found that the award against Eastern Panama could be enforced against Signal under an alter ego theory, asserting that Eastern Panama was merely a shell corporation and that Signal is truly responsible for Eastern Panama's obligations. Id. at 301.[4] In affirming the district court, the Second Circuit held that:

> an action for confirmation is not the proper time for a District Court to "pierce the corporate veil." The usual officer of the confirmation action under 9 U.S.C. § 9 is simply to determine whether the arbitrator's award falls within the four corners of the

---

[4] The alter ego theory focuses on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." Eichleay Corp. v. International Association of Bridge, Structural and Ornamental Iron Workers, 944 F.2d 1047, 1059 (3d Cir. 1991).

> dispute as submitted to him. . . . It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported "alter ego."

Id. Because they were not parties to the arbitration proceedings at issue in this case, Legacy and CMC contend that, under Orion, their liability cannot be determined in a motion to confirm the arbitration award as it would require a fact intensive inquiry.

The Union counters arguing generally that single employer and alter ego status are questions properly resolved by the Court rather than by an arbitrator and, in particular, that where the court is asked to confirm an arbitration award arising from a labor dispute, it is not only proper for but incumbent upon the court to determine single employer and/or alter ego status in order to assess whether the award can be confirmed against a non-signatory to the collective bargaining agreement. To support its latter argument, the Union initially cites to a number of cases, including a case decided by the Second Circuit, that have either expressly held that Orion governs only commercial arbitration cases and is inapplicable to labor disputes or have nevertheless held that in the context of a labor dispute the arbitration award was properly enforced against a non-signatory that did not participate in the arbitration proceedings. See Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir.), cert. denied, 502 U.S. 910 (1991) ("[R]eliance on ... *Orion Shipping* is misplaced because [that] case involved commercial, not labor arbitration" ); District Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229, 237-238 (S.D.N.Y. 2003) (Finding that Gvozdenovic, as well as other courts, "have made clear that *Orion Shipping* does not preclude a finding of alter ego on a motion to confirm"); District 15, International Association of Machinists and Aerospace Workers, AFL-CIO v. Numberall Stamp

7

and Tool Co., 658 F. Supp. 648, 650-51 (S.D.N.Y. 1987) (Finding that "Numberall-Maine's reliance on *Orion* is misplaced ... as that petition involved a contractual arbitration provision and not a collective bargaining agreement to which different rules apply"); Matter of Arbitration between Bowen and 39 Broadway Associates, 1992 WL 73480, at *12 (S.D.N.Y. April 2, 1992) ("While the issue is raised in the context of a motion to confirm, the *Orion* rule against considering such matters is not applicable because the underlying arbitration arose out of a collective bargaining agreement"). See also International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc., 831 F.2d 1309, 1313 (7th Cir. 1987) (In an action brought to enforce an arbitration award, the Court found that the partnership that was formed after the arbitration award was issued was the successor to and alter ego of the corporation and, thus, liability was properly imposed on the individual defendants). Notably, defendants have not addressed these cases or otherwise refuted plaintiff's argument in this regard and, as such, it appears that Orion is inapplicable to the instant case.

Rather, it appears that the case is more aptly governed by Textile Workers Union of America v. Cast Optics Corp., 1971 WL 933, at *11-13 (D.N.J. April 29, 1971), aff'd, 464 F.2d 577 (3d Cir. 1972) ("Cast Optics"), upon which the Union principally relies. Therein, the plaintiff-union and Cast Optics, New Jersey, which had entered into a collective bargaining agreement, proceeded to arbitration over a number of labor disputes. The arbitration hearings concluded on April 3, 1970, and an award in favor of the union was issued on July 1, 1970. Id. at *3-4. In the interim, on June 4, 1970, it was revealed in a parallel proceeding that Cast Optics, Delaware existed and was in fact operating Cast Optics, New Jersey's business, having purchased all of its assets in January of 1970. Id. at * 4. Counsel for the union consequently

filed a motion to confirm the award against both Cast Optics, New Jersey and Cast Optics, Delaware. Despite the fact that Cast Optics, Delaware was not a signatory to the collective bargaining agreement and did not participate in the arbitration proceedings, the district court confirmed the award against Cast Optics, Delaware. In so finding, the Court relied on John Wiley & Sons v. Livingston, 376 U.S. 543 (1964) ("Wiley"), in which the Supreme Court, having noted that a collective bargaining contract is not an ordinary contract but a generalized code governing the whole employment relationship, held that:

> It would derogate from "the federal policy of settling labor disputes by arbitration," *United Steelworkers v. Enterprise Wheel & Car Corp.*, [40 LC P 66,630] 363 U. S. 593, 596, if a change in the corporate structure or ownership of a business enterprise had the automatic consequence of removing a duty to arbitrate previously established; this is so as much in cases like the present, where the contracting employer disappears into another by merger, as in those in which one owner replaces another but the business entity remains the same.
>
> \* \* \*
>
> The objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship. The transition from one corporate organization to another will in most cases be eased and industrial strife avoided if employees' claims continue to be resolved by arbitration rather than by "the relative strength ... of the contending forces."

Cast Optics, 1971 WL 933, at *11, quoting Wiley, 376 U.S. at 549. Moreover, the Court rejected Cast Optic, Delaware's argument that it was deprived of the opportunity to appear before the arbitrator and present its own case, finding that Cast Optics, Delaware would have been brought into the arbitration if the change in ownership had been disclosed and that, because the principals

9

of both companies were one in the same, Cast Optics, Delaware was amply represented at the arbitration hearing. Id. at *12. In addition, the Court expressed its belief that the change in ownership was a deceptive scheme entered into in order to avoid an unfavorable arbitration decision and, thus, the interests of justice required confirmation as to Cast Optics, Delaware.

Here, according to the Complaint, there appears to be the same "continuity of operation" between ACH and Legacy as found in Cast Optics, as the Union has alleged that Legacy manages and controls all aspects of ACH's on-going operations and has done so since the management services agreement entered into between ACH and Legacy expired in April of 2007. Complaint ¶¶ 6, 7. Moreover, although defendants argue that their interests were not represented at the arbitration hearing, the Union has alleged in the Complaint that, "[a]t the arbitration, Legacy represented the employer's rights and obligations under the CBA." Complaint ¶ 12. It therefore cannot be said, at least not at this juncture, that Legacy's interests -- if, indeed, it is deserving of single employer status with ACH -- were not represented at the arbitration hearing.

With respect to CMC, it appears undisputed that it was not created until June 26, 2007, which was after the June 12, 2007 arbitration hearing and, thus, could not have been made a party to the arbitration proceedings. See Def.'s Brief, Exh. A: PA Department of State Business Corporation Information Sheet [Dkt. 3-2]; Complaint, Exh. B: Opinion and Award, p.1 [Dkt. 1-4]. Indeed, it is unclear from the record presently before the Court when it was disclosed or when the Union became aware that CMC existed. Thus, under Cast Optics, it appears that the

questions of whether or not Legacy is a single or joint employer with ACH and whether CMC is the alter ego of Legacy are properly before the Court.[5]

In Stearly, 544 F. Supp. at 623, upon which defendants also rely, the Local Union filed a grievance against defendant Stearly, with which it had entered into a collective bargaining agreement, claiming that Stearly had not paid cost of living allowances as provided for therein. The arbitration committee upheld the grievance and the Local Union subsequently filed an action in the District Court for the Eastern District of Pennsylvania seeking to enforce the award not only against Stearly but against Rex Motor Freight, Inc. ("Rex") and William A. Kelly, Inc. ("Kelly"), arguing that the three entities constituted a single employer. Id. at 624. Although the Court agreed that Stearly, Rex and Kelly *could* be found to be a single employer, it concluded that the award could not be enforced against Rex and Kelly because they were not parties to the arbitration proceedings and the issue of whether they were bound by the CBA was never presented to the arbitrators. Id. at 625.

The difficulty with defendants' reliance on Stearly is two-fold. First, as argued by the Union, it overlooks Cast Optics, which not only held that a successor employer that was not a party to the arbitration proceedings could nevertheless be bound by the award, but was affirmed by the Court of Appeals for the Third Circuit. More importantly, however, the decision in Stearly is largely premised on the Court's finding that Rex and Kelly did not participate in the

---

[5] The Court also notes here that in Orion, a case cited by defendants, the Court specifically found that although an action for confirmation was not the proper time to "pierce the corporate veil," Orion was not prevented from bringing a separate action against Signal to enforce the award against Eastern Panama invoking the alter ego theory. 312 F.2d at 301. Here, having previously filed an action to confirm the award against ACH, it appears that the Union has done precisely what the Orion Court has suggested by filing this action against Legacy and CMC invoking single employer and alter ego theories.

11

arbitration proceedings. Here, however, the Union has alleged that Legacy not only participated in but actually represented the employer's interests at the arbitration hearing. Complaint ¶ 12. Under these circumstances, it appears reasonable to infer that if Legacy represented the employer's interests at the arbitration hearing and was, as has also been alleged, a single employer with ACH at the time, that Legacy's interests were also represented at the hearing and that the award speaks equally to Legacy's obligations as to ACH's. While defendants may quarrel with the Unions allegations in this regard, and may ultimately demonstrate their failings, at this stage of the proceedings any factual disputes must be resolved in favor of the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d at 944. As such, defendants' motion in this regard is properly denied.

Defendants also argue that the instant suit seeking confirmation of the arbitration award should be dismissed as premature because the "actual plaintiff in the arbitration proceedings" is disputing the very same award in the case filed against ACH at Civil Action No. 07-1166. Defendants' argument, however, is premised on two misconceptions. First, as previously discussed, the plaintiff in the arbitration proceedings -- SEIU 1199P -- and the instant plaintiff -- SEIU HealthCare Pennsylvania -- are one in the same, having simply changed its name in the interim. Thus, contrary to defendants' insinuation, both this suit and that filed at C.A. No. 07-1166 have been brought by the actual plaintiff in the arbitration proceedings.

Second, while defendants repeatedly suggest that in the companion case filed at C.A. No. 07-1166, the Union seeks to vacate the very award that it seeks to confirm here, it is clear that in that case the Union seeks to vacate only the portion of the award denying benefit contributions retroactive to June of 2004. It is equally clear, however, that it also seeks to

confirm the award against ACH, as the original signatory to the CBA, insofar as its request for contributions was granted after October 30, 2006. See C.A. No. 07-1166: Complaint [Dkt. 1]. These requests are entirely consistent with the Union's present assertions that Legacy and CMC, in addition to ACH, are liable for the same unpaid pension contributions after October 30, 2006. Thus, defendants' suggestion that one case will render the other moot or result in conflicting outcomes, is of no moment and does not appear to provide the basis for dismissing the instant action.

Finally, defendants argue that all three Counts brought in the Complaint should be dismissed because plaintiff fails to state a claim for confirmation of the arbitration award. Defendants contend that because the Union has alleged only that Legacy was a single or joint employer as of April 16, 2007, when the management service agreement it had entered into with ACH expired, they cannot be held liable for any unpaid contributions prior to that time.[6] Because the Union seeks to hold them liable for unpaid pension contributions beginning on October 30, 2006, defendants conclude that the Union has failed to state a claim against them.

In response, the Union argues that in determining whether a successor corporation or alter ego should be held liable for a predecessor's debts it is irrelevant when the breaches occurred. We agree.

In International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc., 1986 WL 4713 (N.D. Ill. April 11, 1986), aff'd, 831 F.2d at 1309, to which the

---

[6]It appears undisputed that single employer status is "characterized by the absence of an arm's length relationship found among unintegrated companies," and that Legacy and ACH were operating at arms length from April 17, 2006 through April 16, 2007 during the pendency of the management service agreement. Stardyne, Inc. v. N.L.R.B., 41 F.3d 141, 152 (3d Cir. 1994).

Union cites, the Court found that successor/alter ego liability turns on "whether the successorship is *bona fide*, or a ploy to escape liability, and whether even if *bona fide*, the successor's business is so connected with the predecessor's that it can be held liable for the predecessor's debts." Id. at *1-2. Indeed, the breaches complained of in Cast Optics, occurred well before Cast Optics, Delaware came into existence yet the arbitration award was confirmed against it as Cast Optics, New Jersey's successor and alter ego. Id., 1971 WL 933, at *11-13. Similarly, in International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contrators, Inc., 831 F.2d at 1309, the arbitration award against Centor was finalized in February of 1985, and was confirmed against its successor and alter ego, Soil Contractors, which did not become its successor until March of 1985.[7]

Defendants have not provided the Court with any contrary authority and, thus, it appears that successor liability is properly imposed notwithstanding when the breaches occurred. As such, whether or not Legacy may be held liable here depends on whether the Union is able to demonstrate that Legacy was ACH's successor and CMC's liability, in turn, depends on the Union's ability to demonstrate CMC's status as Legacy's alter-ego. At this juncture, given the allegations in the Complaint, the Union should be afforded an opportunity to offer such evidence.

Accordingly, it is respectfully recommended that the motion to dismiss filed on behalf of defendants be denied.

---

[7]We also note here that in defining the doctrines of successorship and alter ego, the Court in Cast Optics noted that while both theories are usually applied to determine whether an employer should be compelled to bargain with a union that represented employees of a former employer in the first instance, it could see no reason why the same principles should not be applied to enforcement of arbitration awards, as is the case here. Id. at 1313.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

Date: 24 June, 2008

cc: Hon. David Stewart Cercone
United States District Judge

All counsel of record by Notice of Electronic Filing